## Ethel Tonney, Appellant, v. Illinois Life Insurance Company, Appellee.

Opinion filed July 26, 1929.

SMITH & SMITH and JUNE C. SMITH, for appellant.

HUGH T. MARTIN and HARRY S. PARKER, for appellee; PARKER & SAUER, of counsel.

MR. PRESIDING JUSTICE BARRY delivered the opinion of the court.

The appellant brought this suit on an insurance policy issued to her husband and in which she was named as beneficiary. The cause was tried before the court without a jury and there was a finding and judgment in favor of appellee.

The sole question is as to whether appellee waived the payment of the quarterly premium which was due October 15, 1927, but which could be paid under the terms of the policy not later than November 15, 1927. The policy provided for 30 days' grace after the pay-

ment was due. The undisputed evidence is that the agent spoke to the insured about the payment of the premium prior to November 11, 1927, and asked him if he had sent it in and he replied that he had not; that he was going to let the policy lapse; that he had taken out other insurance in another company. The agent had another talk with the insured on November 11, 1927. He then asked the agent how much the insurance would cost him a month and was informed that it would be about $10; but that they did not figure what it would be monthly. The insured said he wanted to pay $10 on it and the agent told him that would not keep his insurance in force; that it was not in conformity with the provisions of the policy; that he could either pay the premium annually, semiannually or quarterly, but that there was no provision for monthly premiums; that conversation took place on the street in front of the agent's office. They then went into the office and the agent told him that by making out and signing a note he could get an extension of time. The agent filled out a note for the quarterly premium, $26.65, and asked the insured to sign it and if the same was approved by the company they would give him the extension of time which he desired. The insured said he did not want to do that; that he just wanted to pay $10. The agent then told him that would not keep his insurance in force but that if he wanted to sign the note it would be all right. The insured then said to the agent that he should take the $10 and send it in to the company and that if they did not want to handle it that way they could dispose of it.

The agent then took the insured's check for $10 and mailed it to appellee with a letter informing appellee that the insured desired an extension of 30 days on the balance of his quarterly premium. November 11, 1927, was Armistice Day and was on a Friday. The letter probably reached Chicago sometime Saturday but Sat-

urday afternoon being a holiday it did not reach appellee until Monday, November 14, 1927. On November 16, appellee wrote the agent acknowledging receipt of the said letter and informed him that as payment of the premium was not made in full by November 15, the last day of the grace period, the policy had lapsed, and asked the agent to secure the application of the insured for reinstatement and to forward the same with the balance of $16.65; that the remittance of $10 would be held in suspense until the completed application for reinstatement and a remittance for $16.65 was received.

Very soon after the insured gave his check to the agent on November 11, 1927, he left for Arkansas and there was accidentally killed on November 16, 1927. On the same day and long before appellee learned of the death of the insured, it had written the agent informing him that the policy had lapsed and that it would be necessary for the insured to make an application for reinstatement.

It clearly appears that before the insured gave the agent his check for $10 he was informed that the payment of that amount would not keep his policy in force. He was told that if he wanted an extension of time he should sign a note which the agent then and there filled out, but this he refused to do. In view of this undisputed evidence it cannot be successfully contended that payment of the quarterly premium on or before November 15, 1927, was waived by appellee. We find nothing in the record bearing upon the payment of other premiums prior to the one in question that would warrant us in holding that prompt payment of the premium in question was waived.

Finding no reversible error in the record the judgment is affirmed.

*Affirmed.*